UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS PHELPS

    Petitioner,

v.

RHONDA RICHARD, Warden,
Correctional Reception Center,

    Respondent.

CASE NO.: 1:12-cv-896

Barrett, J.
Merz, M.J.

**OPINION AND ORDER**

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("Report"). (Doc. 19). Petitioner Thomas Phelps has filed objections to the Report. (Doc. 21).

**I.    LEGAL STANDARDS**

    **A.  Standard of Review**

When objections to an order of a magistrate judge are received on a non-dispositive matter, the district judge must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72.

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to preserve any issues for review: "[a] general objection to the entirety of the Magistrate [Judge]'s report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

1

Nevertheless, the objections of a petitioner appearing *pro se* will be construed liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### b. Habeas Corpus

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court may not issue with respect to any claim adjudicated on the merits in the State court unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## II. ANALYSIS

The Report addresses Phelps' four grounds for relief. Phelps filed objections to grounds one, three and four of the Report.[1] Phelps contends that there was insufficient evidence of aggravated murder, the state court's decision was an unreasonable application of *Arizona v. Youngblood*, 485 U.S. 1033 (1988), governing the destruction of evidence, and the dismissal of a potential juror meets the standard set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986).

### A. Grounds One: Insufficient Evidence

As correctly explained in the Report (Doc. 19, PageId 1121), there are two levels of deference that federal courts are required to give to state court decisions when a petitioner challenges the constitutional sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). First, the federal court must determine whether, viewing the evidence in the

---

[1] Phelps briefly mentions ground two, but then argues as to ground one only. As both grounds concern the sufficiency of the evidence, and the Magistrate Judge considered the grounds together, the undersigned assumed that Phelps' objections related to both grounds as considered in the Report.

2

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review does not permit a subjective determination of guilt or innocence by the federal court; rather, it is deferential to the responsibility of the trier of fact to weigh the evidence, resolve the conflicts in testimony, and draw reasonable inferences from the basic facts to the ultimate facts. *Id.* An individual's due process guarantee of sufficiency of the evidence extends only to the facts necessary to establish the elements of the crime. *Allen v. Redman*, 858 F.2d 1194, 1196-98 (6th Cir. 1988) (citing *Jackson*, 443 U.S. at 316). Second, even if the federal court disagrees with the state court, the federal court may not overturn the state court decision rejecting a sufficiency of the evidence challenge unless the state court decision was "objectively unreasonable." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam); *see also Brown*, 567 F.3d at 205.

In his objections, Phelps reasserts his arguments that his due process rights were violated because there was not sufficient evidence to support his conviction of aggravated murder. To be found guilty of aggravated murder, the State must have established that Phelps caused the death of Mr. Land and that he did so purposefully and with prior calculation and design. Ohio Rev. Code § 2903.01(A).

Phelps first objects to the Magistrate Judge's conclusion by rearguing that there was no evidence, direct or circumstantial, that would show he had any prior calculation or design to kill Mr. Land. (Doc. 21, PageId 1141). As the Magistrate Judge recognized, Phelps is correct that no "direct" evidence of prior calculation and design exists. With respect to the circumstantial evidence, Phelps disagrees with the Magistrate Judge's conclusion on the basis that there was evidence that Mr. Land stabbed Phelps during the fight and that Phelps was forced out of the bar,

which undermine the circumstantial facts supporting the jury's findings. But the undersigned agrees with the Magistrate Judge that such facts do not negate the facts reasonably supporting the jury's finding of prior calculation or design. (*See* Doc. 21, PageId 1124-25). Not only could the jury have rejected those facts, but there also were facts that after Phelps left the bar, he went to his car and got his gun, reentered several minutes later, and immediately began shooting. Further, the undersigned does not find it was objectively unreasonable for the state court to conclude that "the jury was free to reject Phelps's tenuous argument that he was legally provoked over four minutes later when he reentered the bar with a loaded gun to find and to kill Land." *State v. Phelps*, 2011-Ohio-3144, ¶ 31 (1st Dist. App. June 29, 2011).

To further support his contention, Phelps cites to *State v. Richardson*, 103 Ohio App. 3d 21, 25 (1st Dist. 1995) to argue a lack of prior calculation and design. *Richardson*, however, does not undermine the State court's reasonable determination. In *Richardson*, the State court determined that the actions at issue all took place almost instantaneously and there was nothing more than a momentary deliberation. Here, the jury was presented with circumstantial evidence from which a rational trier of fact could find prior calculation and design. Specifically, as explained above, the evidence, construed in the light most favorable to the prosecution, indicates that Phelps left the bar and went to his car to get his gun. Several minutes later, when the door to the bar was unlocked, Phelps reentered and began shooting at once, firing multiple shots until he hit the employee. Unlike in *Richardson*, several minutes elapsed between the triggering incident and the shooting. As the *Richardson* court recognized, "the reflection need not be long nor the plan elaborate" for there to be prior calculation and design. Accordingly, the Magistrate Judge correctly deferred to the First District Court of Appeals' determination, finding that it was not

4

objectively unreasonable to conclude that a rational trier could have found the essential element of prior calculation and design was satisfied.

Relatedly, Phelps objects to the Magistrate Judge's determination by rearguing that the evidence shows the driving force behind his actions were passion and rage stemming from the altercation and events that took place at the bar.  (Doc. 21, PageId 1142).  But as the Magistrate Judge correctly determined, the evidence was sufficient to allow the jury to reject Phelps' argument.  As previously explained, the First District Court of Appeals' conclusion that "the jury was free to reject Phelps's tenuous argument that he was legally provoked over four minutes later when he reentered the bar with a loaded gun to find and to kill Land" was not objectively unreasonable.

Accordingly, Phelps' objection as to the Report's conclusion as to the insufficiency of the evidence is overruled.

**B.  Ground Three:  Failure to Preserve Evidence**

Pursuant to *California v. Trombetta*, 467 U.S. 479, 489 (1984), a criminal defendant's Fourteenth Amendment Due Process right to be given an opportunity to present a meaningful defense is violated when the government fails to preserve materially exculpatory evidence.  Yet, the police do not have a duty to retain all documents and materials that could possess evidentiary significance.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Failure to preserve evidence that is potentially useful to the defendant thus is not a violation of due process rights unless the defendant can prove that the officers acted in bad faith.  *Id.*; *see also State v. Geeslin*, 116 Ohio St. 3d 252, 254 (2007).

Phelps' third ground for relief concerns the surveillance tape.  Phelps reargues in his objections that Detective Merkle edited evidence out of the tape before and after the trigger event

that shows Mr. Land stabbing Phelps and that could have potentially shown Mr. Land was in possession of a knife at some point in the night before the fight.  The First District Court of Appeals reasonably concluded that the evidence was not materially exculpatory.  As the First District Court of Appeals and the Magistrate Judge pointed out, Merkle testified that he preserved all of the recording from the trigger event forward and that there was nothing exculpatory in what was recorded before the trigger event, the eyewitness testimony corroborates Merkle's testimony, and the trial court impliedly found Merkle's testimony credible.  Further, the First District Court of Appeals recognized that Phelps had an opportunity to present his theory of the case to the jury and offer an explanation for the alleged missing portions of the tape, which Phelps has not contested other than through conclusory and unsupported arguments.  As the undersigned concludes that determination was reasonable, it must defer to that determination.

      The First District Court of Appeals and the Magistrate Judge also did not err with respect to their findings as to bad faith.  As noted in the Report, Phelps points to no evidence of bad faith but simply claims that the tape was edited in bad faith because the screen turned blue at times during the video.  But as has been noted, Merkle testified that he preserved all of the evidence from the trigger event forward, and witness testimony corroborates his testimony.  Moreover, as Phelps points out in his objections, there was testimony as to the technical reasons the surveillance cameras turned blue (Doc. 7-6, PageId 753-54; Doc. 7-7, PageId 802-04), which do not demonstrate bad faith.  While Phelps suggests other reasons for the blue screens, his speculations do not constitute evidence of bad faith or demonstrate an unreasonable determination by the First District Court of Appeals.

      To the extent Phelps also objects to the Magistrate Judge's consideration of the claims as adjudicated on the merits, the undersigned finds no error by the Magistrate Judge in that regard.

6

Accordingly, Phelps' objection as to the Report's conclusion as to the failure to preserve evidence is overruled.

### C. Ground Four: Racially-Biased Exercise of Peremptory Juror Challenge

*Batson v. Kentucky*, 476 U.S. 79 (1986) prohibits race-based preemptory challenges by a prosecutor. A trial court must use a three-step process to evaluate a *Batson* claim. First, the opponent must make a *prima facie* showing that the proponent of the strike has exercised a peremptory challenge on the basis of race. Second, the burden then shifts to the proponent to articulate a race-neutral reason for the challenge. Third, the trial court must determine if the opponent has carried his burden of proving purposeful discrimination.

In the Report, the Magistrate Judge considered Phelps' argument that three jurors impermissibly were stricken because of their race. In his objections, Phelps only reasserts his argument that juror eighteen was stricken because of race. The Report correctly points out that the trial judge's conclusion that a preemptory challenge is race neutral can only be overturned by clear and convincing evidence. Phelps has not met that burden. The First District Court of Appeals indicated that the prosecutor's reason for striking juror eighteen was because of his short answers and overall demeanor, which was confirmed by the trial judge who determined the challenge was racially neutral based on the circumstances. *State v. Phelps*, 2011-Ohio, 3144, ¶ 19 (1st Dist. App. June 29, 2011). Phelps compares juror eighteen with juror fourteen, a non-African American who was not stricken. As noted in the Report, at no point in the record or his reply brief did Phelps argue or provide evidence that juror eighteen and juror fourteen shared the same demeanor. He likewise has failed to provide such argument or evidence in his objections. The Magistrate Judge's deference to the First District Court of Appeals' decision that Phelps did not meet the standard was not erroneous. The conclusion was not based on an unreasonable

determination of facts in light of the evidence and it is not contrary to or an unreasonable application of the *Batson* standard.

Accordingly, Phelps' objection as to the Report's conclusion as to the *Batson* challenge for juror eighteen is overruled.

### III. CONCLUSION

Consistent with the foregoing, Petitioner's Objections (Doc. 21) are **OVERRULED** and the Report (Doc. 19) is **ADOPTED**. Accordingly, it is **ORDERED** that:

1. The Petition is DISMISSED with prejudice.
2. Because reasonable jurists would not disagree with this conclusion, Phelps is DENIED a certificate of appealability and the Court CERTIFIES that any appeal would be objectively frivolous.

**IT IS SO ORDERED**.

                                                s/Michael R. Barrett
                                                JUDGE MICHAEL R. BARRETT
                                                UNITED STATES DISTRICT JUDGE